# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 3626 | DATE | 9/18/2000 |
| CASE TITLE | Telemark Development Group, Inc. vs. John P. Mengelt | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Order. This memorandum order is therefore issued to enable Mengelt's counsel to fill the gap identified here by delivering a supplemental submission to this Court's chambers (with a copy of course to Telemark's counsel) on or before September 21 if it is possible to do so. If that happens, the September 22 presentment date will serve as the occasion for setting at timetable for Telemark's Rule 56 response and Mengelt's reply.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 19 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | 9/18/2000 | |
| | Copy to judge/magistrate judge. | 00 SEP 18 PM 3: 53 | date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TELEMARK DEVELOPMENT GROUP, INC.,  )
                                    )
            Plaintiff,              )
                                    )
     v.                             )  No. 00 C 3626
                                    )
JOHN P. MENGELT,                    )
                                    )
            Defendant.              )

MEMORANDUM ORDER

Counsel for defendant John Mengelt ("Mengelt") has served notice of the proposed September 22 presentment of Mengelt's Fed. R. Civ. P. ("Rule") 56 motion for summary judgment together with supporting documents. This memorandum order is issued sua sponte in advance of that date because of a puzzling (to say the least) gap in Mengelt's papers.

This order should not be mistaken as expressing an ultimate view on the merits of the litigation, just as this Court's July 31, 2000 oral ruling that denied without prejudice Mengelt's earlier "Motion for Partial Summary Judgment" against Telemark Development Group, Inc. ("Telemark") did not embrace such an ultimate view. But Mengelt's current motion is advanced as though this Court had been whistling "Dixie" when it made its earlier ruling, ignoring as it does this Court's then-articulated identification of an important issue that obviously needs to be confronted en route to the disposition of the parties' rights and obligations.

When the Memorandum of Points and Authorities ("Memorandum," cited "Mem.") that has been tendered by Mengelt's counsel in conjunction with the current motion finally gets around to the potentially critical questions of whether, when and how Mengelt "effect[ed] a transfer of the collateral" at issue here--160,000 shares of Wasatch International, Inc. ("Wasatch") common stock-- it does so in a startlingly offhand fashion. Mem. 1-9 addresses a whole congeries of other issues as though they are the only ones that merit consideration in conjunction with Mengelt's motion to obtain summary judgment on Telemark's claim as set out in its Complaint. Then the rest of the Memorandum (something less than four pages) turns to Mengelt's counterclaim for a deficiency, and only part way into that discussion does the Memorandum even advert to what it calls Mengelt's "sale" of the stock.

Astonishingly enough in that respect, in speaking on that subject the Memorandum neither quotes nor even says a word about the language of the section of the promissory note at issue here ("Note") that is captioned <u>Collateral</u> (emphasis added):

> The makers will furnish to payee fully endorsed stock certificates in the publicly traded corporation known as Wasatch International, Inc. The stock certificates will represent 160,000 shares of common stock in the company. The value of the stock at execution of this Note is $.35 USD. In the event that the value of the collateral shall exceed the obligation <u>at such time as payee may effect a transfer of the collateral</u>, Payee agrees to return to maker any and all excess which may exist less than reasonable fees and/or costs which

2

payee may incur.

Yet that is the provision that this Court had <u>expressly</u> called to both sides' attention in the course of rejecting the earlier effort by Mengelt's counsel to get a judgment as a matter of law at the threshold stage of the litigation. And what does Mengelt's affidavit (the only evidentiary affidavit that he advances in compliance with Rule 56(e)) say on that score? Just this (emphasis added):

> At about the time the Note was executed by the parties. the Plaintiff endorsed 160,000 shares of the Wasatch International stock in blank and delivered them to me as security for the Note. I have the stock to this day.
>
> After the Plaintiff defaulted on the Note (and since the Plaintiff virtually invited me to do so on April 6, 1998), I seized and took possession of the stock for my own account. It was, <u>in effect</u>, a private sale of stock.

That of course begs the question entirely. It is frankly bogus for Mengelt's counsel to point, at Mem. 9, to cases that deal with endorsements of stock certificates in blank, coupled with delivery, as sufficient to transfer ownership where such conduct is in conjunction with such a transfer that is intended to take place currently--as though that analysis were somehow equally applicable (as it is not) to a delivery pursuant to a collateralization transaction.[1] Instead the question remains

---

[1] Indeed, Mem. Ex. B is a March 1998 letter from Mengelt to one of the principals in Telemark in which Mengelt refers to "<u>your</u> 160,000 shares of Wasatch International, Inc." (emphasis added). There is no possible argument that Mengelt regarded the

3

whether it suffices for Mengelt to assert post hoc, only after Telemark has tendered full payment on the admittedly past due Note, that Mengelt's silent inaction had somehow transmuted his security interest into outright ownership at some earlier date--and on that score the continued silence of Mengelt's counsel, both in factual terms and as to any legal authority, matches the earlier silence of their client.

Until such time as the parties proffer their respective analyses called for hereafter, this Court will not of course essay its own resolution of the issues. But both counsel must address the obvious fact that the Note's language, in referring to a "transfer" of the collateralized stock, speaks of something to take place _in the future_, so that the original collateral delivery of endorsed Wasatch shares <u>cannot</u> be the "transfer" spoken of in the Note. That fact is what has occasioned this Court's characterization of Mengelt's reliance on Illinois caselaw addressing totally different questions as "bogus." And that fact just as clearly poses such questions as whether Mengelt's now-claimed "transfer," which could have taken place only in his mind, can conform to the terms of the Note or whether--simply by way of example--Wasatch had the typical corporate bylaws provision that transfers of its stock take effect only when recorded on the corporate books (a provision

---

initial delivery as a transfer of <u>ownership</u> rather than merely a transfer of <u>possession</u> for security purposes.

4

that was not found controlling in the <u>Fellows v. Miler</u> decision cited at Mengelt's Mem. 9--cited with a typographical error in the case name--but that might well be operative in the very different circumstances of this case).

Maybe Mengelt's counsel disagrees with this Court's identification of the portion of the Note's language quoted earlier in this memorandum order as raising an issue relevant to the litigation. And such possible disagreement is certainly an advocate's right. But it is an understatement to say that it reflects extraordinarily poor judgment for counsel simply to ignore such a judicial expression.

This memorandum order is therefore issued to enable Mengelt's counsel to fill the gap identified here by delivering a supplemental submission to this Court's chambers (with a copy of course to Telemark's counsel) on or before September 21 if it is possible to do so. If that happens, the September 22 presentment date will serve as the occasion for setting a timetable for Telemark's Rule 56 response and Mengelt's reply. If not, this Court expects to learn on September 22 what short additional time frame Mengelt's counsel needs to complete that supplementation, then to be followed by the appropriate response and reply.

Milton I. Shadur
Senior United States District Judge

Date: September 18, 2000